UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

DINO CAROSELLI,

     Petitioner,

  vs.

JOSEPH SMITH,[1] Superintendent,
Shawangunk Correctional Facility,

     Respondent.

No. 9:06-cv-01371 JKS

MEMORANDUM DECISION

   Petitioner Dino Caroselli, a state prisoner proceeding *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Caroselli is currently in the custody of the New York Department of Correctional Services, incarcerated at the Shawangunk Correctional Facility.  Respondent has answered the petition and Caroselli has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

   Caroselli is currently serving concurrent indeterminate prison terms of 17 years to life arising out his 1993 conviction in the Kings County Supreme Court of Attempted Robbery in the First Degree (N.Y. Penal Law §§ 110.00/160.15(4)), two counts of Attempted Aggravated Assault of a Police Officer (N.Y. Penal Law § 110.00/120.11(2)), and two counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03).  The validity of this conviction is not at issue in these proceedings.

   In December 2002, while an inmate at the Auburn Correctional Facility, Caroselli, waiting to attend a disciplinary hearing, threatened to kill a correction officer, bit the officer above his left eye, and, during a struggle with the officer, punched him in the face.  After a disciplinary hearing relating to this incident, Caroselli was found guilty of violent conduct,

---

[1] Joseph Smith, Superintendent, Shawangunk Correctional Facility, is substituted for Glen S. Goord, Commissioner, New York State Department of Correctional Services.  Fed. R. Civ. P. 25(d); Rules—Section 2254 Cases, Rule 2(a).

assault on staff and threats to staff, and he was punished with eight years in the Special Housing Unit ("SHU"), and loss of packages, commissary, and telephone privileges, for the same period. On administrative appeal, the punishment time period was reduced to 72 months.

Caroselli filed a petition under Article 78 of the N.Y. Civil Practice Law and Rules in the Albany County Supreme Court, which granted the petition and, in an unpublished decision, ordered a new hearing. No rehearing was held on that charge. Instead, Caroselli was served with a new misbehavior report informing him that he had been convicted in Cayuga County Court of two counts of Assault in the Second Degree for the December 2002 incident at Auburn Correction Facility. Following a disciplinary hearing, Caroselli was again found guilty and penalized with 72 months in SHU, and the loss of privileges. The hearing officer's determination was affirmed on administrative appeal. Caroselli then filed an Article 78 petition in the Supreme Court, Albany County, which dismissed the petition. The Appellate Division, Third Department, affirmed the dismissal, and the Court of Appeals of New York denied leave to appeal on March 23, 2006.[2]  Caroselli timely filed his petition for relief in this Court on November 13, 2006.

Caroselli was released from the SHU and returned to the general prison population on July 18, 2007.

## II.  GROUNDS RAISED/DEFENSES

Although it is not entirely clear from the petition, it appears that Caroselli is challenging the decision of the administrative officer, *i.e.*, that he was denied due process of law. Like the Respondent, this Court assumes that Caroselli presents three of the same grounds in his petition to this Court as he presented to the Appellate Division: (1) the hearing officer erroneously refused to permit Caroselli to call the Cayuga County judge who presided at his criminal trial; (2) lack of adequate notice that a criminal conviction could subject him to disciplinary sanctions; and, (3) that double jeopardy bars the disciplinary proceeding.[3]  Respondent contends that the

---

[2] *In the Matter of Caroselli v. Goord*, 803 N.Y.S.2d 288 (N.Y. App. Div. 2005), *lv. denied*, 846 N.E.2d 475 (N.Y. 2006) (Table).

[3] It appears that Caroselli raised a fourth ground before the Appellate Division: refusal to permit Caroselli to examine a lay witness (Cayuga County Court assistant) to testify to the legal definition of

(continued...)

matter is now moot and this action is not properly brought as a habeas corpus action but must be brought as a civil rights action under 42 U.S.C. § 1983.  Respondent raises no other affirmative defenses.[4]

STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially

---

[3](...continued)
"conviction."  Caroselli has not raised that issue in his petition before this Court.

[4] Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

higher threshold than simply believing the state court determination was incorrect.[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[11]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[12]

In applying this standard, this Court reviews the last reasoned decision by the state court.[13]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14]

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[15]  A federal court must accept that state courts correctly applied state laws.[16]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[17]  A federal court may not issue a habeas writ based upon a perceived error of state law

---

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[12] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[16] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584 (2002).

[17] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[18]

## IV.  DISCUSSION

A.  **Mootness**.

Respondent contends that by Caroselli's release from the SHU to the general prison population, his petition has been rendered moot.  Unconditional release from custody does not render the matter moot if there are any significant collateral consequences as a consequence of the conviction.[19]  While the existence of serious collateral consequences are presumed to flow from a criminal conviction,[20] the issue is not quite so clear with respect to prison disciplinary actions where, as in this case, the discipline imposed has been consummated.

Respondent contends that Caroselli is not subject to collateral consequences as a result of the disciplinary action at issue in the case.  Caroselli, on the other hand, contends that he is subject to continued collateral consequences as a result of his Tier III disciplinary action, providing as an example loss of his right to participate in the family reunion program.[21]  The Second Circuit has held, in the context of a civil rights action under 42 U.S.C. § 1983, that the loss of good time credits was a sufficient collateral consequence to prevent a prisoner's subsequent release from solitary confinement from rendering his complaint moot.[22]  Given the inadequacy of the record, the fact that the burden of establishing mootness is on the

---

[18] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[19] *Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968).

[20] *See Spencer v. Kemna*, 523 U.S. 1, 9–13 (1998) (citing *Sibron v. New York*, 392 U.S. 40, 55–56 (1968)).

[21] 7 N.Y. Comp. Codes R. & Regs. § 220.2(a)(2).  (The existence of the disciplinary action is also a factor that the Parole Board must consider in reviewing Caroselli's suitability for release on parole.  9 N.Y. Comp. Codes R. & Regs. § 8002.3(c)(2)).

[22] *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Bradley v. Coughlin*, 671 F.2d 686, 689 n.9 (2d Cir. 1982) (noting that "expungement can affect a prisoner's future rights and privileges in the prison system, the issue is not de minimis").

Respondent,[23] and the liberality with which this Court must construe *pro se* filings,[24] this Court declines to dismiss the petition as moot.

B.  **Applicability of § 2254**.

Respondent also argues that this action must be brought under the Civil Rights statute, 42 U.S.C. § 1983, not as a habeas petition under 28 U.S.C. § 2254.  Contrary to the arguments advanced by Respondent, *Preiser v. Rodriguez*[25] does not necessarily support his position.  In *Preiser*, the Supreme Court, in upholding the dismissal by the district court of a civil rights action arising out of a prison disciplinary proceeding that resulted in the deprivation of good time credits brought under § 1983, held that § 2254 was the exclusive remedy for state prisoners attacking the validity of or length of their confinement.[26]  It did not hold, and it is certainly not implicit in that decision, that habeas relief is not available to challenge prison disciplinary proceedings.  On the other hand, the Supreme Court has significantly cabined civil rights actions where, as a predicate to recovery, the prisoner would necessarily have to demonstrate the invalidity of a criminal conviction.[27]  Likewise, this case does not fit neatly within the scope of the recent decision of the Supreme Court in *Wilkinson v. Dotson*.[28]  In *Dotson*, the Supreme Court held that habeas relief was not the exclusive remedy where prisoners challenged the constitutionality of parole procedures *per se*, not, as in this case, due process violations in a particular proceeding.  In *Dotson*, prisoners challenged the application of new parole guidelines enacted after their convictions, seeking a new parole hearing applying the guidelines that were in

---

[23] *See Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005), citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

[24] *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

[25] *Preiser*, 411 U.S. 475 (1973).

[26] *Id.* at 487–89.  Indeed, *Preiser* declined to explore the limits of habeas relief, instead limiting its holding to challenges to the fact or duration of physical confinement.  *Preiser*, 411 U.S. at 500.  *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (habeas is the appropriate remedy for seeking restoration of good time credits lost as a result of prison disciplinary proceedings).

[27] *Heck v. Humphrey*, 512 U.S. 477, 481–82 (1994); *see McKitchen v. Brown*, 481 F.3d 89.

[28] 544 U.S. 74 (2005).

effect at the time of their respective convictions.[29]  The Supreme Court, noting that the relief sought would not necessarily result in a shortening of the sentences imposed, held that relief was available under § 1983.[30]

 The Second Circuit has held that a *federal* prisoner may bring an action challenging prison disciplinary actions under the general habeas section, 28 U.S.C. § 2241.[31]  In *Peralta*,[32] in what it termed a "mixed case" involving the conditions as well as the length of confinement, the Second Circuit permitted a prisoner to proceed with his § 1983 action only "*if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*"[33]  These cases indicate that the Second Circuit views habeas relief as appropriate where the outcome may have a direct impact on the length of confinement.

The parties have not cited any controlling authority that specifically applies, nor has independent research by the Court discovered any such authority.  Given the confusion regarding the applicability of habeas proceedings under § 2254 to challenging prison disciplinary hearings, this Court is reluctant to place Caroselli in the potentially "Catch-22" situation of having no remedy.  Accordingly, the Court declines to dismiss the petition on the grounds that habeas relief is not available under 28 U.S.C. § 2254.

C.  **Merits**.

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due a defendant in a criminal prosecution does not apply.[34]  In the context of prison disciplinary proceedings, the minimum requirements of due process are:  (1) advance written notice of the charges brought against the inmate; (2) the right to call witnesses and

---

[29] *Id.* at 76–77.

[30] *Id.* at 81–82.

[31] *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) and cases cited therein.

[32] *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006).

[33] *Id.* at 104 (emphasis in the original); *see Muhammed v. Close*, 540 U.S. 749, 754 (2004) (per curiam) (holding that *Heck's* favorable termination requirement does not apply to § 1983 actions challenging "prison disciplinary proceedings in the absence of any implication going to the fact or duration of [the] underlying sentence").

[34] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

present documentary evidence in his defense; (3) a written statement of the factfinder of the evidence relied on and the reasons for the disciplinary action taken,[35] and (4) the findings must be supported by some evidence in the record.[36]  Inmates do not, however, have a right of confrontation and cross-examination.[37]

Under the rules and regulations promulgated by the Department of Correctional Services ("DOCS"), an inmate charged with a rules violation must receive the written misbehavior report at least 24 hours before the hearing,[38] has the right to present documentary evidence,[39] may be present at the hearing,[40] and call witnesses.[41]  The hearing officer must provide the inmate with a written statement of the disposition setting forth the evidence relied upon and the reasons for any penalties imposed.[42]  Thus, the procedures utilized by DOCS at least facially comply with minimum due process requirements.

Ground 1:  Calling Trial Judge as Witness.

The Inmate Misbehavior Report incorrectly stated that Caroselli had been convicted in the Cayuga County Court of a violation of N.Y. Penal Code § 102.05, a non-existent provision, instead of the section of which he was convicted, § 120.05.  Caroselli wanted to call the Cayuga County trial judge to establish that he was not convicted of the charge stated on the Inmate Misbehavior Report.  Caroselli contends this violated his right to call witnesses on his behalf.  In rejecting Caroselli's argument, the Appellate Division held:

> Petitioner's first argument on appeal stems from typographical errors in the misbehavior report, which erroneously indicated that petitioner had been convicted of nonexistent sections of the Penal Law.  We find no abuse of discretion in the Hearing Officer's decision to deny petitioner's request to have

_____

[35] *Id*. at 556–66.

[36] *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

[37] *Wolff*, 418 U.S. at 567.

[38] 7 N.Y. Comp. Codes R. & Regs., § 253.6(a).

[39] 7 N.Y. Comp. Codes R. & Regs., § 253.6(c).

[40] 7 N.Y. Comp. Codes R. & Regs., § 253.6(c).

[41] 7 N.Y. Comp. Codes R. & Regs., § 253.5(a).

[42] 7 N.Y. Comp. Codes R. & Regs., § 253.7(a)(5).

the judge who had presided over his criminal trial be called as a witness.  An inmate may call witnesses at a disciplinary hearing "provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals."  Given other, conclusive evidence, including petitioner's admission at the hearing that he was convicted of assault under Penal Law § 120.05, the judge's testimony would have been redundant.[43]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[44]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[45]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[46]

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[47]  New York employs a similar rule.[48]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome of the proceedings.[49]  Caroselli "bears

---

[43] *In the Matter of Caroselli v. Goord*, 803 N.Y.S.2d 288, 290 (N.Y. App. Div. 2005), *lv. denied*, 846 N.E.2d 875 (N.Y. 2006) (Table) (citations omitted).

[44] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[45] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[46] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[47] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[48] *People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[49] *Fry*, 551 U.S. at 121 (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[50]

Here the testimony of the trial judge was, as the Appellate Division indicated, redundant and certainly would not have impacted eventual resolution of Caroselli's guilt or innocence of the charges in the Inmate Misbehavior Report.  The transcript of the hearing clearly shows that the hearing officer understood which New York Penal Code Section was violated, and the officer who authored the Inmate Misbehavior Report testified that he had made a transpositional error in filling out the report.  Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[51]  Nor can this Court find that the Appellate Division unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro, i.e.,* the state court's decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[52]  Caroselli is not entitled to relief under his first ground.

Ground 2:   Notice of Criminal Conviction as Predicate to Disciplinary Sanctions.

Caroselli contends that the prison rule book was ambiguous in that it did not give him notice that he could be disciplined for a conviction of a provision of New York Penal Law. Caroselli argues that because the rule book did not specifically list "criminal conviction" among those offenses for which he could be disciplined, he was not given adequate notice.  The Appellate Division rejected Caroselli's argument, holding:

> Next, petitioner asserts that he lacked adequate notice that a criminal conviction could subject him to disciplinary sanctions.  Inasmuch as the term "criminal behavior" used in the Standards of Inmate Behavior provided to him is

---

[50] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[51] 28 U.S.C. § 2254(d).

[52] *Wiggins*, 539 U.S. at 520–21.

unquestionably broad enough to encompass a criminal conviction, petitioner's argument lacks merit.[53]

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[54]   The notice requirement is satisfied if it provides inmates "of ordinary intelligence a reasonable opportunity to know what is prohibited."[55]   It is clear to any person of ordinary intelligence that Caroselli, in violating New York Penal Law, engaged in "criminal behavior."   Ordinary intelligence and common sense tell us that if he had not there would not have been a "criminal conviction."   Any error arising out of the use of the term "criminal conviction" in the Inmate Misbehavior Report was *de minimis* and certainly does not arise to a constitutional level.

Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56]   Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade–Williams–Schriro*, *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[57]   Caroselli is not entitled to relief under his second ground.

---

[53] *Caroselli*, 803 N.Y.S.2d at 290.

[54] *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Caroselli challenges only the notice requirement, not arbitrary and discriminatory enforcement.

[55] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[56] 28 U.S.C. § 2254(d).

[57] *Wiggins*, 539 U.S. at 520–21.

Ground 3:  Double Jeopardy.

Caroselli argues that the failure to hold a new hearing as mandated by the Appellate Division in reversing his original conviction for the December 2002 incident deprived DOCS of jurisdiction over the incident and his subsequent conviction on the charge of violating the penal law was barred by the Double Jeopardy Clause.[58]  In rejecting Caroselli's position, the Appellate Division held:

> Petitioner also argues that the principles of res judicata, collateral estoppel and double jeopardy bar this disciplinary proceeding because, prior to his criminal conviction, he had been charged and found guilty of violating certain disciplinary rules relating to the incident at the Auburn Correctional Facility.  That determination was ultimately reversed by the Supreme Court (Malone Jr., J.) in a CPLR article 78 proceeding and a new hearing was ordered, yet no rehearing was held.  Contrary to petitioner's arguments, the abandonment of that prior proceeding did not bar prison officials from instead disciplining him based on his subsequent criminal conviction.[59]

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  In essence, the Double Jeopardy Clause protects a criminal defendant against three things:  (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense."[60]  This case implicates the first consideration.  The Supreme Court recently addressed the function and operation of the Double Jeopardy Clause.

> Our cases have recognized that the Clause embodies two vitally important interests. The first is the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety

---

[58] Caroselli bases his argument that DOCS lost jurisdiction on an alleged failure to hold a rehearing on the original Inmate Misbehavior Report within the time required by DOCS regulations.  This aspect of Caroselli's argument is an issue of state law, which, as noted above, is beyond the purview of this Court in a federal habeas proceeding.

[59] *Caroselli*, 803 N.Y.S.2d at 290–91.

[60] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds*, 490 U.S. 794 (1989).

and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.  The second interest is the preservation of the finality of judgments.[61]

It has long been settled that the general prohibition against successive prosecutions in the Double Jeopardy Clause does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, whether through direct appeal or collateral attack, because of some error in the proceedings leading to conviction.[62]

Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[63]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*, *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[64]  Caroselli is not entitled to relief under his third ground.

### V.  CONCLUSION AND ORDER

Caroselli is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** this Court declines to issue a Certificate of Appealability.[65]  To the extent the issues raised in the petition were addressed by the Appellate

---

[61] *Yeager v. United States*, 555 U.S. ___, 129 S. Ct. 2360, 2365–66 (2009) (internal quotation marks and citations omitted).

[62] *United States v. Ball*, 163 U.S. 662, 672 (1896) (retrial permissible following reversal of conviction on direct appeal); *United States v. Tateo*, 377 U.S. 463, 466 (1964) (retrial permissible when conviction declared invalid on collateral attack).

[63] 28 U.S.C. § 2254(d).

[64] *Wiggins*, 539 U.S. at 520–21.

[65] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal
(continued...)

Division, Fourth Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated: October 9, 2009.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.<br/>United States District Judge

---

[65](...continued)
quotation marks omitted).

MEMORANDUM DECISION
*Caroselli v. Smith*, 9:06-cv-01371 JKS                    14